United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELENA M. DE LA ROSA,

Plaintiff,

v.

JO ANNE B. BARNHARDT, Commissioner of Social Security,

Defendant.
_______________________________________/

No. C 05-04190 JSW

**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion of Plaintiff Elena De La Rosa ("De La Rosa") for summary judgment and/or remand and the Commissioner of Social Security Administration's ("Commissioner") cross-motion for summary judgment. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, the Court hereby GRANTS De La Rosa's motion for remand and DENIES the Commissioner's cross-motion for summary judgment.

**BACKGROUND**

De La Rosa brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner denying her request for social security disability benefits. De La Rosa is a forty-five year old woman with a ninth-grade education. (Certified Transcript ("Tr.") at 36, 64.) She has work experience as a hostess, waitress, telephone entertainer, and jazz vocalist. (Tr. at 17, 36-38, 117-18.) She has not been gainfully employed since June 2002,

United States District Court
For the Northern District of California

when she stopped working as a hostess. (Tr. at 36, 92.) De La Rosa claims that she cannot work because of Chronic Fatigue Syndrome ("CFS"), Irritable Bowl Syndrome ("IBS"), arthritis in her right foot, and anxiety. (Tr. at 17.)

De La Rosa lives by herself in an apartment. (Tr. at 86, 123.) She is able to care for herself and her personal hygiene, with frequent breaks. Prior to her first disability application, filed on May 8, 2003, she was able to do light housework, but she is no longer able to do so. (Tr. at 84, 86, 123.) De La Rosa spends much of the day resting, though not napping, as it would disrupt her sleep cycle. (Tr. at 84-85, 114.) In addition, De La Rosa walks approximately 30-40 minutes each day and performs approximately 30-120 minutes of quiet meditation each day. (Tr. at 85.) De La Rosa does not drive, as she does not have a license, but she is able to walk and take public transportation when needed. (Tr. at 88, 103.) Though her health care providers recommended Celexa on several occasions, De La Rosa does not take any prescription medication for her symptoms. (Tr. at 40, 131-34.) However, she does take a combination of natural herbs and medicines. (Tr. at 40, 131-32.)

Medical reports from Tamara Ooms, De La Rosa's treating family nurse practitioner at Lyon Martin Women's Health Services, show that De La Rosa was first diagnosed with IBS in 1995, and that she began to show symptoms of CFS as early as November 2001. (Tr. at 211.) Ms. Ooms reported that although De La Rosa's physical exams were normal, De La Rosa had the following symptoms: self-reported short-term memory or concentration impairments, sore throat, multiple joint pain, unrefreshing sleep, and post-exertional malaise lasting more than twenty-four hours. (Tr. at 192, 211.) Ms. Ooms also reported that De La Rosa exhibited palpably swollen or tender lymph nodes and nonexudative pharyngitis. (Tr. at 192.) She opined that De La Rosa would miss at least four days of work per month due to her CFS. (Tr. at 195.) Furthermore, Ms. Ooms and Jennifer Wachter, a social worker who had also been treating De La Rosa at Lyon Martin Women's Health Services, opined that De La Rosa was unable to participate in the work force, and would continue to be unable to do so for an unforeseeable period of time. (Tr. at 197.) Dr. Lisa Pratt, also of Lyon Martin Women's Health Services,

reviewed the written reports submitted by Ms. Ooms and Ms. Wachter and stated that she agreed with them. (Tr. at 222.)

On June 18, 2003, De La Rosa was seen at San Francisco General Hospital Medical Center on referral from Lyon Martin Women's Health Services for pain in her right foot. She was diagnosed with hallux rigidus, arthritis in the big toe of her right foot. (Tr. at185.) De La Rosa underwent surgery for removal of a bone spur in connection with the arthritis on August 21, 2003, which proceeded without complications. (Tr. at 178.)

On June 28, 2003, De La Rosa underwent a consultative examination by psychologist Ronald F. Johnson (Tr. at 18, 158-61.) Dr . Johnson noted that De La Rosa's "thinking patterns had a schizotypal quality, particularly when she referred to her experiences in Tarot readings and expressing her feelings of intuition in terms of being 'psychic.'" (Tr. at 160.) Though he found that De La Rosa was "the general picture of a difficult diagnostic formulation," Dr. Johnson observed that:

> There were no gross vegetative signs of depression, and no evidences of psychomotor retardation. However, I think there is underlying depression, and this is intertwined with anxious tension, and probably represents a long-standing dysthymic disorder going back to childhood experiences involving family instability.

(*Id.*) Dr. Johnson noted that he could "find no clear evidences of a formal thought disorder, major affective disorder, or obvious organicity in a clinical examination." (*Id.*)

On July 16, 2003, De La Rosa underwent a consultative examination by internist Dr. William Steinsmith at the Bay View Medical Clinic. (Tr. at 18, 150-53.) Dr. Steinsmith noted De La Rosa's history of CFS, IBS, and pan-spinal pain syndrome. (Tr. at 152.) Dr. Steinsmith found that except for De La Rosa's inability to "perform stable on-toe walks because of a tender right great toe, the anatomic and functional examination of [her] arthro-musculoskeletal systems were within normal limits." (Tr. at 152.) Dr. Steinsmith found that De La Rosa was able to bear weight for four hours a day, bend, kneel, and lift 20 pounds, ascend stars and walk several city blocks, sit without restriction, and safely commute via public transportation. (Tr. at 153.)

On July 30, 2003, Dr. Robert E. Lee, a psychiatric consultant for the state, reviewed De La Rosa's medical file. He found that "no marked limitations of mental functioning seemed

pervasive in the claimant's mental status examination," and that "Ms. De La Rosa's mood disorder, albeit chronic, is of a low-grade intensity." (Tr. at 163.) Dr. Lee also found that De La Rosa suffered from a non-severe mental impairment based on dysthymia and mixed personality disorders. (Tr. at 166).

On August 8, 2003, Dr. Herbert N. Mitchell, a medical consultant for the state, reviewed De La Rosa's medical file. Dr. Mitchell found De La Rosa capable of occasionally lifting 50 pounds, frequently lifting 25 pounds, standing or walking for approximately six hours per day, sitting for approximately six hours a day, and unlimited pushing and pulling. (Tr. at 168.) Dr. Mitchell also noted that the severity and duration of De La Rosa's symptoms were "disproportionate to the expected severity or expected duration on the basis of the claimant's medically determinable impairment(s)." (Tr. at 172.)

In addition to submitting a Fatigue Questionnaire and Daily Activities Questionnaire with her medical records, De La Rosa also submitted a Function Report by a Third Party ("Function Report"). (Tr. at 84-85, 86-91, 100-108.) In the Function Report, De La Rosa's friend, David Kitagawa, reported De La Rosa's daily activities and symptoms as of June 3, 2003. Specifically, he noted that on most days De La Rosa ate cold cereal for breakfast, bathed and sometimes did her make up, went for walks twice a day, for 20-30 minutes each, ate a sandwich for lunch, watched television or ran short errands, and ate take-out for dinner. (Tr. at 100, 107.) Kitagawa reported that while De La Rosa used to be able "to do all the routine day-to-day stuff," currently "any kind of physical/mental activity leaves her exhausted." (Tr. at 101.) According to Kitagawa, De La Rosa "has trouble sleeping every night." (*Id.*) Kitagawa further observed that De La Rosa only performed light housekeeping, sometimes spreading the housekeeping out over 2-3 days, and that she shopped at a corner store for smaller purchases once or twice a week. (Tr. at 102-03). Kitagawa would drive De La Rosa to the store for larger purchases once or twice per month, and help her take out the garbage and clean. He also noted that De La Rosa was able to handle her own financial matters, although it left her tired, and that dealing with people had also become very taxing for De La Rosa. (Tr. at 103-04.) Kitagawa reported that De La Rosa's condition had affected her memory and concentration, as well as her

abilities to understand, follow instructions, complete tasks, and get along with others. (Tr. at 105.) Kitgawa also noted that De La Rosa handled stress very poorly. (Tr. at 106.)

On May 8, 2003, De La Rosa filed for social security disability benefits, alleging disability beginning June 17, 2002. She claimed that CFS, IBS, and anxiety prevented her from working. (Tr. at 50.) On August 14, 2003, the Social Security Administration denied her application on the basis that her condition was not severe enough to prevent her from working (Tr. at 64, 50.) On March 11, 2004, her motion for reconsideration was also denied for the same reason. (Tr. at 55.)

On March 31, 2004, De La Rosa timely filed a request for a hearing. De La Rosa alleged that her disability status was furthered by an intervening operation on her foot. (Tr. at 39-40, 112.) Administrative Law Judge Fenton Hughes ("ALJ") conducted the hearing on September 28, 2004. (Tr. at 16, 32-47.) De La Rosa and vocational expert James Grier both testified at the hearing. The ALJ kept the record open to give De La Rosa an opportunity to submit materials from Dr. Lisa Pratt, a physician at Lyon Martin Women's Health Services, regarding De La Rosa's treatment at the clinic. (Tr. at 34.) The ALJ requested that De La Rosa's counsel obtain "a brief typed letter. . . on her letterhead, [with] the diagnosis and a brief statement of why she can't work." (*Id.*) Dr. Pratt later submitted a letter stating that she reviewed the reports of both Ms. Ooms and Ms. Wachter, and agreed with the reports. (Tr. at 222.)

The ALJ found that although De La Rosa had CFS and IBS, and that these impairments were severe, they were not severe enough to prevent De La Rosa from performing her prior work as a waitress, telephone quotation clerk, and jazz vocalist. (Tr. at 20-21.) The ALJ further found that De La Rosa retained the residual functional capacity "to perform the exertional demands of medium work;" that is, De La Rosa can lift no more than 50 pounds at a time, frequently lift 25 pounds, and stand, walk, and sit for approximately six hours in an eight-hour day. (Tr. at 20.) As such, the ALJ found De La Rosa not disabled. (Tr. at 21.)

The ALJ found that De La Rosa's allegations were not credible for the following reasons:

> First, the weight of the objective evidence does not support the claimant's claims of disability limitations to the degree alleged. Examination have [*sic*] been

United States District Court
For the Northern District of California

> normal. Second, she has been receiving alternative treatment through holistic medication consisting of yoga exercise, diet, use of herbal medicine, etc. She has declined anti-depressant medications. Third, she noted some improvement in her symptoms with herbal routine. Fourth, her CFS dating back to at least 2001 as per available records in file is characterized by complaints of daily fatigue, sleeplessness, muscle aches, post-exertional fatigue, concentration difficulty, depression and heat intolerance. However, she is able to walk 30-40 minutes each day (whether she has energy or not), and to engage in quiet meditation 30-120 minutes per day. She is also able to take care of her personal needs and do some light household chores. Consequently, the claimant's allegations are not credible to refute the residual capacity assessment found above.

(Tr. at 20) (internal citation omitted). Accordingly, on November 26, 2004, the ALJ denied De La Rosa's petition. (Tr. at 16-22.)

De La Rosa subsequently filed a petition for appeal, which was denied on July 22, 2005. (Tr. at 6-9.) On October 17, 2005, having exhausted her administrative remedies, De La Rosa filed this action for judicial review of the final decision of the ALJ's decision denying her request for Social Security Disability benefits.

## ANALYSIS

### A. Standard of Review of Commissioner's Decision to Deny Social Security Benefits.

A federal district court should not disturb the ALJ's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, the district court must consider "the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Id.* Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal citations omitted). The question before the Court is whether the ALJ's decision is supported by substantial evidence, not whether another decision could have been reasonably made: where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

**B. Legal Standard for Establishing a Prima Facie Case for Disability.**

The ALJ follows a five-step process in determining whether the claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42; *see* 20 C.F.R. 404.1520. First, the claimant must not be engaging in substantial gainful activity. 20 C.F.R. 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. 404.1520(c). Third, if the claimant's impairment meets or equals one of the impairments listed in the appendix to the regulation, the claimant will be found disabled without consideration of age, education, or work experience. 20 C.F.R. 404.1520(d). Fourth, if the impairment does not meet or equal one of the listed impairments, the ALJ will assess the claimant's residual function capacity ("RFC")[1] based on medical evidence to assess whether the claimant's impairment prevents her from engaging in past relevant work. 20 C.F.R. 404.1520(e)-(f). If the claimant can do such work, she will not be found disabled. 20 C.F.R. 404.1520(f). Fifth, if the impairment prevents the claimant from doing past relevant work, the claimant's age, education, work experience, and residual functional capacity are considered to see if the claimant is capable of performing other work that exists in the national economy. 20 C.F.R. 404.1520(g). The claimant is not entitled to disability benefits if the claimant can adjust to other work. *Id.*

The claimant has the burden of proof at steps one through four; the burden shifts to the ALJ at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). However, the ALJ has an affirmative duty to help the claimant develop the record at each step. *Id.* at 1098 n.3. Developing the record includes "arranging for consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources." 20 C.F.R. 404.1545(a)(3). If the ALJ determines at any step that the claimant is not disabled, there is no need for subsequent analysis. 20 C.F.R. 404.1520(a)(4).

**C. The ALJ Failed to Consider Lay Witness Evidence.**

De La Rosa claims that the ALJ improperly disregarded the Function Report by a Third Party, completed by De La Rosa's friend David Kitagawa ("Function Report"), in evaluating De

---

[1]Residual function capacity is the most the claimant can still do in a work setting despite her limitations. 20 C.F.R. 404.1545(a)(1).

La Rosa's credibility. (Tr. 100-08; Plaintiff's Mot. at 7-8.) "Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account. . . unless he expressly determines to disregard such testimony, in which case he must give reasons that are germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis in original) (citation and quotations omitted); *see also Stout v. Commissioner*, __ F.3d. __, 2006 WL 2052306, *2 (9th Cir. July 25, 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."). Here, Mr. Kitagawa testified as to De La Rosa's daily activities and symptoms. The ALJ did not address Mr. Kitagawa's observations in the Function Report.

The Commissioner cites *Vincent v. Heckler*, 739 F.2d 1393 (9th Cir. 1984) for the proposition that the ALJ was not required to accept the lay witness evidence from Mr. Kitagawa or to give reasons for rejecting it. However, the Commissioner's reliance on *Vincent* is misplaced. In *Vincent*, lay witnesses provided medical diagnoses, "which are beyond the competence of lay witnesses and therefore do not constitute competent evidence." *Nguyen*, 100 F.3d at 1467 (distinguishing *Vincent*). In contrast, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, 20 C.F.R. § 404.1513(e), *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), and therefore cannot be disregarded without comment." *Nguyen*, 100 F.3d at 1467 (emphasis in original) (finding ALJ's conclusion that claimant could do previous work was not supported by substantial evidence because ALJ did not set forth reasons as to why he discounted lay testimony regarding claimant's symptoms).

Mr. Kitagawa provided observations regarding De La Rosa's symptoms and daily activities, which is competent lay testimony. Therefore, the ALJ erred by failing to address Mr. Kitagawa's testimony in the Function Report. The Court cannot conclude that this error was harmless. *See Stout*, __ F.3d __, 2006 WL 2052306, *3-5. A court is precluded from considering such error to be harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at *5. The Ninth Circuit in *Stout* reasoned that the error was not harmless

United States District Court
For the Northern District of California

because "[i]f fully credited, the lay testimony support[ed] a conclusion that [the claimant's] mental impairments render[ed] him in need of a special working environment which . . . a reasonable ALJ could find preclude[d] [the claimant] from returning to gainful employment." *Id.* Similarly here, if Mr. Kitagawa's testimony were fully credited, a reasonable ALJ could find De La Rosa was precluded from returning to gainful employment. Therefore, the Court concludes that based on the ALJ's failure to expressly address the Function Report, the ALJ's determination that De La Rosa is not disabled is not supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, this Court grants De La Rosa's motion for remand and denies the Commissioner's motion for summary judgment. The Court hereby reverses the decision of the ALJ and remands this matter for consideration of the Function Report.

**IT IS SO ORDERED.**

Dated: August 11, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE